Filed 1/16/14     Certified for publication 1/30/14 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE CITY OF RIVERSIDE,<br>        Plaintiff and Respondent,<br>v.<br>WILLIAM HORSPOOL,<br>        Defendant and Appellant. | E051500<br><br>(Super.Ct.No. RIC10011477)<br><br>OPINION |
| THE CITY OF RIVERSIDE,<br>        Plaintiff and Respondent,<br>v.<br>WILLIAM F. HORSPOOL et al.,<br>        Defendants and Appellants;<br><br>KEVIN RANDOLPH as Receiver etc.,<br>        Movant and Respondent. | E053605 |

APPEAL from the Superior Court of Riverside County.  Gloria Trask and Richard J. Oberholzer, Judges.[1]  Affirmed.

Robinson-Legal and Raymond G. Robinson for Defendants and Appellants.

Gregory P. Priamos, City Attorney, and Brandon S. Mercer, Deputy City Attorney, for Plaintiff and Respondent.

---

[1] Judge Oberholzer is a retired judge of the Kern Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1

Gresham Savage Nolan & Tilden, Nicholas Firetag and Marlene Allen-Hammerarlund for Movant and Respondent.

The City of Riverside (City) filed a nuisance abatement action as to property owned by William and Kelly Horspool, and sought the appointment of a receiver pursuant to Health and Safety Code section 17980 et seq. Defendant William Horspool (William)[2] appealed from the order appointing the receiver in case No. E051500,[3] but failed to obtain an undertaking on appeal. Kevin Randolph, in his capacity of receiver, obtained an order permitting the sale of the property to a party who rehabilitated the property after defendants frustrated his efforts to do so. A notice of appeal on behalf of both Horspools was filed in case No. E053605, from the order permitting the sale of the property and an order awarding the receiver extraordinary costs and fees. J.P. Morgan Chase Bank, the holder of the mortgage on the property, did not appeal.

On appeal, William raises 12 issues challenging the adequacy of the prelitigation notice of the proposed receivership, the appointment of the receiver, the propriety of the order for posting bond to challenge the appointment of the receiver, the entry of the defaults of both Horspools, the orders precluding them from opposing the receiver's ex parte application to sell and the order permitting the sale of the property, error in allowing the receiver to sell the property for less than its fair market value, error in

_____

[2] Because they have the same last name, we refer to William and Kelly by their first names for clarity, without disrespect.

[3] Kelly Horspool was dismissed from the appeal in case No. E051500 on November 17, 2010, because she was not named as an appellant on the notice of appeal, and did not separately appeal.

2

precluding them from opposing the loan stripping effect of the sale of the property, error in awarding the receiver $114,000 in fees and costs, and error in allowing the receiver to conduct a private sale of the property. We affirm.

BACKGROUND[4]

On December 10, 2008, the City of Riverside received a complaint regarding a vacant house on Mt. Vernon Avenue. A code enforcement officer conducted an aerial inspection of the property and observed a dilapidated roof. The following day, the officer inspected the property from a public right of way and observed the landscape and house were in a condition of dilapidation and disrepair ranging from landscape maintenance issues, including structural maintenance issues, and fire hazards caused by overgrown and dried weeds, as well as accumulated dead leaves. The officer posted a notice of violation instructing defendants William and Kelly Horspool to remediate specified issues before December 30, 2008.

On December 30, 2008, the code enforcement officer reinspected the property and

---

[4] We provide a detailed history because it is relevant to the receiver's costs claim. William's rendition of the background history of the case is replete with argument and is lacking in accurate material facts, presenting only information favorable to his position. An opening brief is not an appropriate vehicle for an attorney to "'vent his spleen'" after losing. (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 32.) An appellant has a duty to summarize the facts fairly in light of the judgment. (*Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 50.) The appellant's brief must set forth *all* of the material evidence bearing on the issue, not merely the evidence favorable to appellant. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see also *Weinstock v. Weinstock* (1962) 206 Cal.App.2d 683, 686.) Here, an inordinate amount of time was spent attempting to determine what actually happened in the trial court, due to William's failure to include a proper rendition of the facts. (See *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 166 [a court may award sanctions for a party's unreasonable violations of the rules of appellate procedure].)

observed no changes or improvements. On January 8, 2009, an administrative civil penalties notice and order (ACPNO) was issued for violations of sections 6.14.020(b), 6.14.030, 6.15.020(b), (c), and 6.11.040 of the Riverside Municipal Code. Notice of the ACPNO was sent by mail to the property owners and interested parties on January 8, 2009.[5] William Horspool was personally served with the ACPNO on January 10, 2009. On February 18, 2009, the officer reinspected the property and observed the violations had not been corrected.

On March 5, 2009, a notice of the administrative civil penalties hearing was sent to the property owners and interested parties, seeking an order assessing administrative costs incurred. The notice was served by certified mail to William and Kelly Horspool, as well as the banks having a security interest in the property. An attorney for defendants William and Kelly Horspool appeared at the hearing for defendants. After the hearing, an administrative order was issued assessing daily civil penalties against the defendants.

On June 11, 2009, the Horspools filed for chapter 13 bankruptcy (it was converted to a chapter 7 bankruptcy on 6-29-09, case No. 6:09-bk-22815-PC) and obtained a stay, preventing the City from moving forward with the receivership. On April 1 and September 29, 2009, the code enforcement officer reinspected the property once per month, but no changes or improvements were observed.

On October 2, 2009, another notice of hearing was served by certified mail on

_____

[5] The declaration of the code enforcement officer states the notice was sent on January 9, 2010, but the actual notice was dated January 8, 2009. We assume the date in the declaration is a typographical error and that the date on the actual notice is the correct date.

defendants regarding a new ACPNO. On November 6, 2009, an administrative hearing order was issued assessing daily civil penalties in the amount of $500 a day. Additionally, the property was determined to be a public nuisance.

On April 20, 2010, the City obtained relief from the automatic stay in bankruptcy. On June 9, 2010, the City filed a complaint for nuisance abatement and an injunction, and a petition for appointment of a receiver, pursuant to Health and Safety Code section 17980.7. Proofs of service show the complaint was personally served on William. After three successive attempts to serve Kelly Horspool (Kelly) on different dates, substitute service was effected by leaving the summons and complaint with William, followed by mailing a copy of the summons and complaint to Kelly at her address.

On July 30, 2010, a hearing on the City's motion to appoint a receiver was held. William personally appeared at the hearing (in pro. per.) to request additional time to respond to the complaint. He represented to the court that he was in the process of refurbishing the property, although the City provided photographs taken the day before the hearing, which showed no improvements had been undertaken. The court agreed to postpone the hearing until August 2, 2010, on the condition William provide pictures showing significant improvement.

On August 2, 2010, the court held a hearing on the City's motion for appointment of a receiver. William appeared with counsel and made a general appearance. William's counsel informed the court William could not do anything to the property due to the fact he had filed for bankruptcy. The City demonstrated it had obtained an order exempting these proceedings from the automatic stay by the bankruptcy court. The court granted the

5

City's motion and appointed Kevin Randolph as receiver.

On August 3, 2010, a notice of appeal was filed by William Horspool. On August 6, 2010, William filed an ex parte motion for an order fixing the amount of the appeal bond or dispensing with the bond pending appeal. On August 13, 2010, the court ordered an appeal bond in the amount of $80,000 to be posted within 10 days. No bond or undertaking on appeal was posted.

On the same day William filed his first appeal, he also filed a notice of related case, *Horspool et al. v. City of Riverside*. Another action, apparently seeking an injunction against the City to prevent it from proceeding with the receivership, was also filed in superior court under case No. INC080588. The trial court in the injunction action recognized that the action was in response to the appointment of the receiver in the instant action by another judge and refused to grant a temporary restraining order on August 24, 2010, informing William that the pending appeal was the appropriate remedy.

On August 20, 2010, the receiver submitted his initial inventory of property and initial report. The report indicated that William had refused to allow access to the property, under the belief that the appeal automatically stayed the receivership. Although William had represented he lived on the property, there was no evidence of human occupancy: the kitchen was gutted, asbestos debris was piled on the floor, there was mold on the walls of the den/patio, exposed wiring, no functioning bathroom due to lack of toilets, sinks or bathtubs, and there were no beds in the bedrooms.

On August 23, 2010, the clerk entered the defaults of both William and Kelly Horspool. On August 28, 2010, the Horspools filed a second chapter 13 bankruptcy

6

petition (case No. 6:10-bk-37614-MJ), obtaining a stay of all proceedings. On September 17, 2010, the bankruptcy court granted relief to the City, and issued an order declaring the automatic stay is not in effect as to the City's nuisance actions "pursuant to 11 U.S.C. § 362(b)(4)." Because the motion for relief did not specifically address the receiver's authority to proceed with the receivership, the City sought a more specific order (its third application for relief) from the bankruptcy court, which granted the relief on October 8, 2010, and made the relief binding on any future bankruptcy.

On October 18, 2010, a motion to set aside default was filed as to both Horspools along with a motion to quash the complaint as to Kelly. The motion was not immediately heard because on November 19, 2010, defendants filed an ex parte application in the bankruptcy court to reopen their chapter 7 bankruptcy in case No. 6:09-bk-22815-CB, requiring the City to file a fourth motion for relief from the automatic stay on December 16, 2010. On December 22, 2010, the bankruptcy court issued an order confirming that the City's action to enforce code violations was exempt from the automatic stay.

On January 7, 2011, the receiver filed an ex parte application for an order approving the receiver's proposed rehabilitation plan, outlining the steps to be taken to bring the property up to code. On January 14, 2011, the Horspools filed a notice of removal of the receivership action to the bankruptcy court, but the bankruptcy court remanded the matter to the superior court on March 3, 2011, because the matter was not a removable claim.

On April 6, 2011, the receiver filed an ex parte application for an order approving the sale of the property. The application was made on the ground that the Horspool's

7

actions had made it impossible for the receiver to obtain financing to pay for the rehabilitation of the property. Further, the multiple bankruptcy filings prevented the receiver from filing the motion earlier and required the City to seek four separate applications for relief from the bankruptcy stays.

The delays resulted in further deterioration and vandalism of the property, increasing the expense of rehabilitation. The estimated cost of rehabilitation ranged from $123,550 to $131,650, but the property was appraised, "as is," at a value of only $117,000. Thus, an as-is sale to an investor-buyer with the personal resources and willingness to complete repairs was the best option. The receiver had identified a buyer who was willing to purchase the Mt. Vernon property, "as is," for $75,000, and to fund the cost of repairs, under the oversight of the receiver.

William opposed the proposed sale of the property on the ground his due process rights had been violated due to failure to serve the ex parte application on him.[6] On April 28, 2011, the court granted his motion to set aside the default. However, because William's counsel had substituted in as attorney for William only, he was deemed to lack standing to make the motion on Kelly's behalf. The court made no ruling as to Kelly.

The following day, the court granted the receiver's motion for an order approving the sale of the Mt. Vernon property "as is," free and clear of all liens and encumbrances. On May 9, 2011, William filed a motion for reconsideration of the order approving the sale of the property. Before that motion could be heard, William filed a notice of appeal

---

[6] At that time, William's default had not been set aside.

8

in case No. E053605, from the order approving the sale, purportedly on behalf of both defendants, William and Kelly Horspool. The motion to reconsider could not be heard because the filing of the appeal deprived the trial court of jurisdiction.

On June 21, 2011, the receiver filed a motion for approval of fees, as well as attorney fees and costs. Escrow closed on the sale of the Mt. Vernon property on June 30, 2011.

Following the filing of a substitution of attorney on behalf of Kelly on May 6, 2011, the court set a hearing date to consider Kelly's motion to set aside the default. On June 6, 2011, Kelly's motion to set aside the default was denied. Kelly made a motion to reconsider the order denying her motion to set aside the default, but that motion was denied on July 26, 2011. On that same date, the court granted the receiver's motion for approval of fees, attorney fees, and costs. On August 23, 2011, defendants (both) filed a notice of appeal from the rulings of July 26, 2011.[7]

## DISCUSSION

### 1. *Standing Issues*

William Horspool purports to appeal on behalf of J.P. Morgan Chase Bank, but cites no authority in support of his assertion of standing. He also argues issues other than the denial of the motion to set aside default on behalf of his wife, Kelly Horspool,

---

[7] Before filing the notice of appeal, William filed a notice of pendency of action (lis pendens). Consequently, the receiver had to file a request for instructions from the court, later deemed a motion to expunge the lis pendens, which was subsequently granted.

9

notwithstanding the fact her default was never vacated and counsel did not appear on her behalf in the trial court. In his reply brief, he argues for the first time that the bankruptcy trustee was an indispensable party who was deprived of notice.[8]

William has standing to appeal on his own behalf as an aggrieved party, but he lacks standing to appeal from any portion of the judgment affecting J.P. Morgan Chase Bank, the bankruptcy trustee, or Kelly Horspool. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 329, pp. 376-377; *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1679 (dis. opn. of Yegan, J.) [an appellant cannot urge error that affects only another party who does not appeal], citing *In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 261; *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1128.) Where only one of several parties appeals from a judgment, the appeal includes only that portion of the judgment adverse to the appealing party's interest, and the judgment is considered final as to the nonappealing parties. (*Estate of McDill* (1975) 14 Cal.3d 831, 840; *Warren v. Merrill* (2006) 143 Cal.App.4th 96, 108.)

The general rule is subject to an important exception: Where the part of the judgment appealed from is so interwoven and connected with the remainder that the appeal from a part of it involves consideration of the whole, such that if a reversal is ordered, it should extend to the entire judgment. (*Carson Citizens for Reform v.*

---

[8] We are not required to address issues raised for the first time in a reply brief. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 722, pp. 789-790; *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn.3; *Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322.) The reply brief raises a number of issues pertaining to the bankruptcy, but none are cognizable here.

10

*Kawagoe* (2009) 178 Cal.App.4th 357, 371, citing *Estate of McDill*, *supra*, 14 Cal.3d at p. 840*.*)  William's interests might be deemed interwoven with those of his wife, Kelly, as to the orders appointing the receiver and approving the sale of the residence. Unfortunately, the appeal from the appointment of the receiver names William only. Kelly defaulted and, absent a judgment by default, an order denying a motion to set aside a clerk's entry of default is nonappealable.  (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 960.)

William's interests are not so interwoven with J.P. Morgan Chase Bank, whose interest in the property is the security for a defaulted loan, or the bankruptcy trustee as to grant him standing to appeal on their behalf.  Because William has not provided any authority to support his standing, we do not reach any claims that the bank or the bankruptcy trustee might have asserted.  We will separately address any claim Kelly may have brought.

## 2.      *All Notice and Due Process Issues Relating to the Manner of Service of Process on William Were Forfeited by William's General Appearance*

Without any citation of authority, in arguments 1, 2, 3, and 4, William challenges the court's in personam jurisdiction over himself (and his wife) due to defective service of (a) the code violations, (b) the prelitigation notice, and (c) the complaint for the appointment of the receiver.[9]  He complains, in part, that he was personally served by a

---

[9]  An appellate court is not required to examine undeveloped claims or to make arguments for the parties.  (*Arce v. Childrens Hospital Los Angeles* (2012) 211

*[footnote continued on next page]*

11

nonregistered process server and, in part, because his wife was served by substitute service. None of his complaints have merit.

William made a general appearance in the proceedings in the trial court. Where a person makes a general appearance, such appearance operates as a consent to jurisdiction of his person. (*Harrington v. Superior Court* (1924) 194 Cal. 185, 189; *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52.) A general appearance occurs when a defendant takes part in the action or in some manner recognizes the authority of the court to proceed. (*Dial 800 v. Fesbinder*, at p. 52; see also *In re Vanessa Q.* (2010) 187 Cal.App.4th 128, 135.) A request for a continuance constitutes a general appearance because the relief could only be requested on a theory that a defendant was submitting to general jurisdiction of the court. (*Knoff v. City etc. of San Francisco* (1969) 1 Cal.App.3d 184, 201, citing *Zobel v. Zobel* (1907) 151 Cal. 98, 100-102.)

William appeared (in pro. per) at the initial hearing on the City's motion for appointment of a receiver, where he requested a continuance to answer the complaint. He made a general appearance and cannot now complain.

William argues at length about the manner of service by an unregistered process server, although he never made a motion to quash service in the trial court, and Kelly's motion is not before us because it was heard after the second notice of appeal was filed. There is no requirement that the person serving notices or a summons must be a

---

*[footnote continued from previous page]*
Cal.App.4th 1455, 1491, citing *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) Nevertheless, we have discretion to reach the points.

12

registered process server and William cites no authority so holding. A summons may be served by any person who is at least 18 years of age and not a party to the action. (Code Civ. Proc., § 414.10.) A notice or other paper may be served by mail, express mail, facsimile transmission, or electronically. (Code Civ. Proc., § 1013.) A notice of code violations pursuant to Health and Safety Code section 17980.6 may be provided by both posting a copy of the order or notice to repair or abate in a conspicuous place on the property and by first class mail.

Although William denies being served with or receiving notice, a review of the entire record shows otherwise. William relies upon Evidence Code section 647 providing that service by a registered process server raises a presumption that service was proper. This does not mean that other forms of service or notice are invalid. The City served the notice of the pending proceedings in person and by mail as provided by statute. (Code Civ. Proc., §§ 414.10, 1013.) William and Kelly Horspool were both properly served with all notices.

Additionally, none of the issues relating to notice or due process were preserved for review by a timely motion to quash service *prior* to making a general appearance. (Code Civ. Proc., § 410.50; *Zaragoza v. Superior Court* (1996) 49 Cal.App.4th 720, 725.) Failure to make a motion to quash constitutes a waiver of the issues of lack of personal jurisdiction, inadequacy of process, inadequacy of service of process, inconvenient forum, and delay in prosecution. (Code Civ. Proc., § 418.10, subd. (e)(3); *Factor Health Management v. Superior Court* (2005) 132 Cal.App.4th 246, 251-252 [defendant not permitted to take action that constitutes a general appearance and then negate the effect of

13

that action by a subsequent motion to quash].)  None of the issues relating to defective notices or service of process (issues 1-4) are cognizable on appeal.

Finally, William's failure to make a proper challenge to jurisdiction in the trial court (as by a motion to quash service prior to any general appearance) forfeits any such challenge on appeal.  (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1406 [failure to raise a point in the trial court constitutes a waiver and appellant is estopped to raise that objection on appeal].)

## 3.    *Kelly Horspool Cannot Appeal*

Kelly Horspool was duly served by leaving a copy of the summons and complaint with her husband, William, at the address they used in all their correspondence and litigation, and was subsequently served by mail on July 6, 2010.  On August 23, 2010, her default was entered.  On October 18, 2010, counsel for William filed a motion to vacate the judgment (which William had appealed) and to quash the complaint as to Kelly. However, because counsel had substituted in as attorney for William only, the relief from default was granted only as to William.

On May 26, 2011, Kelly filed a supplemental motion to set aside her default, but on June 6, 2011, the court denied the motion without prejudice.  Kelly subsequently sought reconsideration of the denial, but that request was denied as well.  No default judgment was entered prior to the institution of these appeals.

On appeal, defendants (issue 5, which purports to be on behalf of both) claim that the court erred by entering their defaults.  Defendants cite no legal authority in support of the argument that the orders were void, which renders the issues forfeited.  Because

14

William's default was set aside, the issue is moot as to him because he is no longer aggrieved by the entry of the default.

As to Kelly, the entry of the default terminates her rights to take any further affirmative steps in the litigation until either the default is set aside or a default judgment is entered. (*Garcia v. Politis* (2011) 192 Cal.App.4th 1474, 1479, citing *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 385.) No judgment by default has been entered to date, so Kelly is barred from appealing the denial of her motion to set aside the default. The denial of such a motion is not appealable. (*First American Title Co. v. Mirzaian*, *supra*, 108 Cal.App.4th at p. 961.)

## 4. *Issues Relating to the Appointment of a Receiver Are Moot*

In issues 6 and 7, William argues that the appointment of the receiver was error, and he challenges the court's act of proceeding with the receiver's motion for authority to sell the property after the notice of appeal had been filed. He acknowledges that he failed to file an appeal bond, a prerequisite to a stay of pending proceedings on appeal, and argues, without authority, that he was not required to post a bond. We note from the record that escrow closed on the subsequent sale of the property on June 30, 2011.

It is true that William was not "required to post a bond" to the extent that the court could not force him to obtain an undertaking against his will. However, the posting of a bond is necessary to stay the proceedings in the trial court. (Code Civ. Proc., § 917.5.) Without such a bond or undertaking, the proceedings cannot be stayed. (*Wilson v. Johnson* (1934) 1 Cal.2d 288, 288-289 [in order to effect a stay of proceedings, compliance with statute requiring undertaking is required].)

15

Because the receivership proceedings were not automatically stayed by the appeal in case No. E051500, the receiver was fully authorized to proceed with attempts to rehabilitate the property and, failing that (due to defendants' interference), apply for authorization to sell the property. Likewise, because no valid stay was in effect, the trial court could properly make appropriate orders respecting the property. (See *Julian v. Schwartz* (1934) 1 Cal.2d 269, 270-271 [appeal from judgment does not serve to divest trial court of jurisdiction to deal with ancillary receiver].)

At this point, William's failure to obtain a stay by undertaking or bond on appeal has left us unable to fashion any meaningful relief from the order appointing the receiver. The trial court had continuing jurisdiction to grant the receiver's request for approval to sell the blighted property and, in fact, that property was sold. An order appointing a receiver is not subject to appellate review after the receiver has settled accounts and been discharged because, at that point, the receiver and the court no longer have control of the subject matter of the receivership. (*First Federal Bank of California v. Fegen* (2005) 131 Cal.App.4th 798, 801.)

In *First Federal Bank of California v. Fegen*, *supra*, 131 Cal.App.4th 798, the court noted that the defendant's failure to post an undertaking permitted the sale of property, rendering the issues moot. (*Id*. at p. 801.) A case is moot when the decision of the reviewing court can have no practical impact or provide the parties effectual relief. (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.) Here, William's failure to post an undertaking on appeal left the trial court free to grant the receiver's application for an order to sell the property, and the receiver

16

proceeded to sell it to a purchaser. Because there is no relief we can grant, the appeal in case No. E051500 is moot.

**5.    *Issues Relating to the Order Approving the Sale of the Property Are Not Cognizable***

William argues the court did not allow him to oppose the receiver's motion for an order approving the sale of the property, but presents no legal argument or citation of authority on the points made. We deem the issue forfeited. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) More significantly, William's contention is unfounded, insofar as a written opposition to the receiver's application was filed.

Procedurally, the order approving the sale of the property is not appealable because such an order is not included in the list of appealable interlocutory orders found in Code of Civil Procedure section 904.1. Further, section 568.5 specifies that a sale is not final until confirmed by the court. However, while not expressly appealable, an interlocutory judgment is nevertheless appealable to the extent that it requires as a collateral matter, the immediate payment of money, or the performance forthwith of an act. (*Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1545; *Stockton v. Rattner* (1972) 22 Cal.App.3d 965, 968.) Thus, it has been held that an order approving the sale of assets is final and appealable as a final determination in a special proceeding. (*In re Bank of San Marino* (1985) 167 Cal.App.3d 247, 250, fn.1, citing *In re Bank of San Pedro* (1934) 1 Cal.2d 675, 680, and *Knoll v. Davidson* (1974) 12 Cal.3d 335, 343.)

The court had authority to approve the sale of the property. (Code. Civ. Proc., § 568.5; Health and Saf. Code, § 17980.7, subd. (c)(4)(H); *City of Santa Monica v.*

17

*Gonzalez* (2008) 43 Cal.4th 905, 930.) An order authorizing the receiver to sell substandard structures that pose a substantial health and safety risk is reviewed for abuse of discretion and is afforded considerable deference. (*City of Santa Monica v. Gonzalez*, at p. 931, citing *Lesser & Son v. Seymour* (1950) 35 Cal.2d 494, 503 [sale of partnership assets and real property]; *People v. Riverside University* (1973) 35 Cal.App.3d 572, 582 [Fourth Dist., Div. Two] [confirming receiver's sale of university furniture and equipment].)

William argues in issue 8 that the court erred in allowing the receiver to proceed with a sale of the property for a nominal sum. This argument also lacks any legal argument with relevant authority. He cites a single case, *Cohen v. Herbert* (1960) 186 Cal.App.2d 488 at page 495, for the proposition that receivers are drastic remedies and it is an abuse of discretion to deny a continuance. This issue is waived for lack of legal argument or citation of relevant authority. (*People v. Stanley*, *supra*, 10 Cal.4th at p. 793.) Additionally, that case is inapposite on the issue of the receiver's power to proceed with a sale authorized by the court. Further, William did not present any competent evidence at the hearing to counter the receiver's appraisal of the property, so his statement as to the value of the property is rejected. He has failed to show the court abused its discretion in ordering the sale of the property after his multifarious legal machinations prevented the receiver from rehabilitating the property.

William argues in issue 9 that the court erred in not allowing the Horspools to oppose the loan stripping, but again cites no relevant authority supporting the position that he had standing to take such a position. The only authority cited under this argument

18

heading is an incomplete citation to *Golden Pacific Bankcorp v. FDIC* (2d Cir. 2004) 375 F.3d 196, which he cites for the proposition that a receiver must endeavor to realize the largest amount for assets of an estate. This authority does not support the point for which it was cited. This issue is forfeited.

In issue 10, a related argument, William again claims the court erred in allowing the loan stripping. He provides no authority for his premise that the court lacked authority to order a sale free of liens or encumbrances, and he provides no showing that he has standing to make this argument where he was not aggrieved by the order. A court of equity has the power to order the sale of property free and clear of liens and encumbrances. (*Spreckels v. Spreckels Sugar Corp.* (2d Cir. 1935) 79 F.2d 332, 334; *Miners' Bank of Wilkes-Barre v. Acker* (3d Cir. 1933) 66 F.2d 850, 853.)

In issue 12, William argues the court erred in allowing the receiver to proceed with a private sale of the home for the nominal sum of $75,000 when it was worth $200,000 more than that, similar to the argument he made under issue 8.[10] We interpret the argument to be a claim that the court abused its discretion. There is nothing in the record to support the premise that the property was worth $275,000 or that it was worth more than the selling price, especially where the sale was conditioned upon the buyer's obligation to rehabilitate the property at his own expense, under the receiver's oversight. The appraised value of the property in its dilapidated state was $117,000, which was less

---

[10]  This point heading is the same as issue 8.

than the lowest bid for the rehabilitation work in the amount of $123,550. There is no showing that the court abused its discretion in ordering the sale.

Additionally, this issue is moot because the sale became final due to William's inaction in obtaining an undertaking to stay the trial court proceedings. (*First Federal Bank of California v. Fegen*, *supra*, 131 Cal.App.4th at p. 801 [sale of the property renders appeal moot].)

**6.** ***Propriety of the Order for Costs and Fees of the Receiver***

In argument 11, William argues that the trial court erred in awarding the receiver $114,000 in fees and costs. He cites a single, incomplete, authority,[11] but the proposition for which the authority was provided is that receivers are often legal luxuries, frequently representing an extravagant cost to losing litigants, and requiring courts to weigh the appointment of a receiver carefully. (*Elson v. Nyhan* (1941) 45 Cal.App.2d 1, 5.) This authority does not address the propriety of receiver's fees and costs, and William has failed to cite any authority for the proposition that the trial court abused its discretion in awarding the receiver $114,000. The issue is therefore forfeited.

Nevertheless, on the merits, the amount of fees awarded to a receiver is in the sound discretion of the trial court and in the absence of a clear showing of an abuse of discretion, a reviewing court is not justified in setting aside an order fixing fees. (*Melikian v. Aquila* (1998) 63 Cal.App.4th 1364, 1368 [Fourth Dist., Div. Two], citing *People v. Riverside University*, *supra*, 35 Cal.App.3d at p. 587.)

---

[11] Counsel also misspelled one of the parties' names in the incomplete citation, making it more difficult to locate.

20

Here, the trial court's findings are supported by the record and must therefore be accorded a deferential standard of review. (*Melikian v. Aquila*, *supra*, 63 Cal.App.4th at p. 1368.) William relentlessly abused the processes of both the state and bankruptcy courts in his efforts to thwart the City's attempts to correct structural defects on his property that were dangerous to health and safety. In fact, he has been deemed to be a vexatious litigant in the case of *Horspool v. Updike*, Riverside Superior Court case No. RIC10021157. In the bankruptcy court, his fourth and final effort at removal of the action was finally met with an order that the City's exception from the bankruptcy stay would apply to any future bankruptcy filing, and specifically directed that no subsequent filing would stay the actions of the City respecting the property.

Given the extraordinary actions the receiver was required to take, the award of fees to the receiver was reasonable.

### DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

KING
J.

Filed 1/30/14

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE CITY OF RIVERSIDE,<br>        Plaintiff and Respondent,<br>v.<br>WILLIAM HORSPOOL,<br>        Defendant and Appellant. | E051500<br><br>(Super.Ct.No. RIC10011477)<br><br>ORDER |
| THE CITY OF RIVERSIDE,<br>        Plaintiff and Respondent,<br>v.<br>WILLIAM F. HORSPOOL et al.,<br>        Defendants and Appellants;<br><br>KEVIN RANDOLPH as Receiver etc.,<br>        Movant and Respondent. | E053605 |

IT IS ORDERED that the January 22, 2014, request for publication of the opinion filed January 16, 2014, is GRANTED. The opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c).

RAMIREZ
P. J.

HOLLENHORST
J.

KING
J.

See attached list

1